### FITCH et al. v. KENNARD et al.

*(City Court of New York, General Term. May 25, 1892.)*

1. **AGENCY—RATIFICATION.**
    Plaintiffs purchased a car load of eggs through defendants' brokers, to be delivered in New York city at a certain time. *Held,* in an action for loss occasioned by nondelivery at the time agreed, that defendants, having forwarded the bill of lading to plaintiffs, and drawn on them for the purchase price, ratified the sale of the brokers, and were bound by their acts and conversations in the premises.

2. **DEPOSITIONS—IMPEACHMENT OF DEPONENT—LAYING FOUNDATION.**
    The deposition of a witness cannot be impeached at the trial by evidence of contradictory statements made by him elsewhere, to which his attention was not called at the time the deposition was taken.

Appeal from trial term.

Action by Halsey Fitch and another against Alexander A. Kennard and another. From a judgment for plaintiffs, defendants appeal. Affirmed.

Argued before NEWBURGER and MCCARTHY, JJ.

*Gruber & Landon,* (*Wm. H. Janes,* of counsel,) for appellants. *J. George Flammer,* for respondents.

MCCARTHY, J. This action was commenced on April 7, 1891, to recover the sum of $366.73, damages, which the plaintiffs claimed to have sustained in consequence of the defendants' breach of contract, growing out of the following facts: The plaintiffs being commission merchants, the defendants offered to sell and ship to them upon the night of March 18, 1891, from Chicago to New York city, a car load of Indiana eggs, at 20½ cents per dozen, delivered in New York, freight prepaid. The plaintiffs paid that sum therefor upon production of the defendants' bill of lading and draft, and before the arrival of the said eggs; but, owing to neglect and delay on the part of the defendants, the said eggs were not shipped on March 18, 1891, and consequently did not arrive in New York city until Tuesday, March 24, 1891, when they ought to have arrived in due course of transportation on Monday, March 23, 1891, had the said eggs been shipped as agreed upon. It was proven that the market in New York city for Indiana eggs on Monday, March 23, 1891, was 24½ cents per dozen, at which price these plaintiffs could have easily sold them, but on Tuesday, March 24, 1891, the quotations for Indiana eggs broke from 24½ cents per dozen to 21¾ cents per dozen, to their loss of $297.33, the

said shipment having contained 10,312 dozen eggs. The plaintiffs further proved that upon the arrival of the said eggs the plaintiffs inspected them, and found that they were not Indiana eggs, as reported, but were what are known in the trade as "Kentucky" or "Southern" eggs, having a value of at least one-half cent per dozen less than Indiana eggs, making an additional loss upon the said shipment of $54.06. The plaintiffs were also obliged to pay $15.34 extra freight thereon before they could obtain possession thereof. The jury rendered judgment for the plaintiffs for the sum of $312.67, disallowing the claim of $54.06, being the difference between northern and southern eggs, as to which subject the main dispute upon the trial arose.

The exceptions taken to the answers to the interrogatories propounded to the witnesses Dodd and Davis we think are not well taken. Their answers are in the main the substance of the conversation, and are the statements of the agent of the defendants, and therefore binding on them. It is very clear that the defendants, having the quantity of eggs for sale, directed the firm of Davis & Co. to sell the same, giving terms and times of shipment. In regard to some of the answers it does not appear but what the members of the firm of Davis & Co. had conversations in relation to the matter. The defendants recognized the acts of these witnesses, since they sent the bill of lading, marked "Exhibit C," and the drafts, marked "Exhibit D," for $2,139.46, to these plaintiffs.

The only other questions to be considered are the exceptions taken to the rulings of the court on the questions put to Mr. Kennard and Wen. It appearing from the testimony, and not contradicted, that Davis & Co. were the agents of the defendants, the defendants were precluded from giving any conversation between them and the witness Dodd. If the defendants' counsel, as he asserts in his brief, wished to show that their agent was mistaken in his testimony, then the questions were too general, and did not indicate the purpose of the same, nor was any such statement made to the trial judge. Besides, the witness Dodd, not being in court, his testimony having been taken by commission, could not be impeached by proof of other statements out of court, unless his attention was called to it in the examination made under the commission. *Stacy* v. *Graham*, 14 N. Y. 492. COMSTOCK, J., in this case, at page 498, says: "The rule does not appear to be uniform in all the states that, in order to impeach a witness by proving previous declarations made by him inconsistent with his evidence, he must be first interrogated as to what he has said. *Tucker* v. *Welsh*, 17 Mass. 160; *French* v. *Merrill*, 6 N. H. 465; *Raymond* v. *Smith*, 5 Conn. 557; *Ware* v. *Ware*, 8 Greenl. 42. It prevails, however, so generally that the cases which are the other way cannot now be considered as authority. The doctrine is well settled in England, and in this state it has now become so familiar that the authorities need not be cited. * * * If the rule in question is founded upon any good reason, (and of this we do not admit a doubt,) there can be none for discriminating in the case of a deposition taken before the trial. If the party against whom the witness is examined knows of the inconsistent statements which he expects to prove at the trial, he can attend, and propose such interrogations as the rule requires, in order to lay the proper foundation for the intended impeachment. If he does not know at the time, but the statements come to his knowledge afterwards, and before the trial, he can apply for a commission or move a postponement until the evidence can be procured, if he thinks it material to his case. The mere absence of the witness has never been considered a reason for allowing his unsworn statements to be proved in order to affect his credibility. * * * The principle on which the practice essentially rests is that both the party and the witness are entitled of right to any explanation which the latter can give of the statements imputed to him. When the witness is present he can be recalled by the same party for the purpose of explanation after the impeachment has been attempted; but if he

happens to be absent, then the right is obviously lost." See *Van Ness* v. *Bush*, 14 Abb. Pr. 37. We find no errors, and judgment should be affirmed, with costs.